**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TRUSTEES OF THE NATIONAL** | * | |
| **ELECTRICAL BENEFIT FUND,** *et al.,* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Action No. TDC-22-1627** |
| | * | |
| **TKG SOLUTIONS, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ****** | |

## REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Default Judgment" filed by Trustees of the following: (a) National Electrical Benefit Fund ("NEBF"); and (b) National Electrical Annuity Plan ("NEAP") (collectively, "Plaintiffs"), and the correspondence and affidavit related thereto. (ECF Nos. 24, 25).[1]  Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and related relief from TKG Solutions, Inc. ("Defendant").

Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 26).  I do not believe that a hearing is necessary.  Local Rule 105.6 (D. Md. 2021).  For the reasons set forth below, I ultimately recommend that Plaintiffs' "Motion for Default Judgment" ("Motion") be **GRANTED**, and that damages be awarded as set forth herein.

---

[1]  NEBF is a defined benefit plan, pursuant to 29 U.S.C. § 1002(35), and NEAP is a defined contribution plan, pursuant to 29 U.S.C. § 1002(34). (ECF No. 16, p. 2). Both plans were established pursuant to trust agreements. (ECF Nos. 24-6, pp. 1-8; 24-7, pp. 1-6; 25, pp. 1-2).

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A.      <u>**Factual Background: The Agreements Related to Contributions to the Benefit Funds**</u>

   Plaintiffs are trustees and the authorized collection fiduciaries and agents of the NEBF and NEAP Funds (the "Benefit Funds"), which were established pursuant to trust agreements.  (ECF No. 1, p. 2, "Complaint").   On May 28, 2019, the Defendant signed the Power Utility Communications Agreement ("Labor Agreement"), related to collective bargaining agreements between local chapters of the International Brotherhood of Electrical Workers Union ("IBEW") and local chapters of the National Electrical Contractors Association ("NECA"). (ECF No. 24-5, pp. 1-9).  By signing the Labor Agreement, the Defendant agreed to be bound by the terms and conditions of the NEBF and NEAP trust agreements. Specifically, the Defendant agreed to make monthly contributions to the Benefit Funds on behalf of its union member employees, as well as to submit monthly reports to NEBF and NEAP of the hours worked by those covered employees. (ECF No. 24-5, p. 5).

   The amounts of the monthly contributions to the Benefit Funds were based on the hours worked by the Defendant's employees. In particular, for the NEBF, contributions were to be paid at "an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit," and, for the NEAP, contributions were to be paid at a rate consistent with those listed in Schedule E of the NEAP signatory provision. (ECF Nos. 24-5, pp. 5, 9; 24-6, p. 2; 25, p. 2). In order to help the Trustees track the contribution amounts due, the Defendant was required to provide reports to NEBF and NEAP alongside all payments due.  (ECF Nos. 24-5, p. 5; 24-6, p. 6; 24-7, p. 5).  If the Defendant failed to timely submit contributions, the trust agreements for the Benefit Funds stipulated that various penalties applied. (ECF Nos.  24-5, pp. 5-6; 24-6, pp. 1-8; 24-7, pp. 1-6).

In particular, the Benefit Funds may collect the following based on the delinquent contributions: (1) interest at a rate of ten percent (10%) per annum, compounded monthly; (2) liquidated damages in the amount of twenty percent (20%); (3) audit fees; and (4) attorney's fees and costs incurred in collecting the delinquent amounts, which are termed "collections costs." (ECF Nos. 24-6, pp. 7-8; 24-7, p. 6; 25, p. 2).

###    B.    Procedural Background

On July 1, 2022, Plaintiffs filed a Complaint against the Defendant alleging breach of the Labor Agreement and the trust agreements establishing the Benefit Funds. Plaintiffs are seeking to collect unpaid contributions allegedly owed to the Benefit Funds, liquidated damages, and accrued interest for work performed "in 2019, 2020, and during February 2022." (Complaint, pp. 7-8). The Plaintiffs also seek court costs, audit costs, and the award of reasonable attorney's fees. (*Id.*, pp. 7-8).

An affidavit completed by a private process server describes that on July 14, 2022, the Defendant was served with the Complaint. (ECF No. 12). The executed summons was returned and filed with the Court on September 6, 2022.  (ECF Nos. 5, 8, 12).  On September 6, 2022, Plaintiffs filed a "Motion for Clerk's Entry of Default," against the Defendant. (ECF No. 13).  On September 30, 2022, the Clerk of the Court entered default against the Defendant. (ECF No. 15). On November 1, 2022, Plaintiffs filed their First Amended Complaint, which  advanced the same relief requested in the initial Complaint, but requested that such relief be granted for work performed "in 2019, 2020, and February through July 2022." (ECF No. 16, "Amended Complaint"). Also on November 1, 2022, the Plaintiffs notified the court that they had served the Defendant with the Amended Complaint via certified mail. (ECF No. 17).

Defendant failed to file a responsive pleading within the 21-day period provided by Federal Rules of Civil Procedure 4 and 12, namely by November 22, 2022. Thus, on November 23, 2022,

Plaintiffs filed a "Motion for Clerk's Entry of Default," related to the Amended Complaint. (ECF No. 20). On December 20, 2022, the Clerk of the Court entered default against the Defendant. (ECF No. 21).

On January 12, 2023, Plaintiffs filed a notice requesting leave to file a "Motion for Entry of Default Judgment." (ECF No. 22). Judge Chuang granted the Plaintiffs leave to file the same. (ECF No. 23). On February 14, 2023, Plaintiffs filed their Motion for Default Judgment. (ECF No. 24, "Motion"). In support of the Motion, Plaintiffs appended the following documents: (a) an "Affidavit of Total Amount Due Plaintiffs" authored by Brian Killian; (b) Labor Agreement; (c) the trust agreements establishing the Benefit Funds; (d) delinquency reports related to the Benefit Funds; (e) a declaration and documents from Jennifer Bush Hawkins, Esq., regarding attorney's fees and costs; and (f) payroll audit reports. (ECF Nos. 25, pp. 1-4; 24-5, pp. 1-9; 24-6, pp. 1-8; 24-7, pp. 1-6; 24-8, pp. 1-9; 24-1, pp. 1-7; 24-9, pp. 1-8). On the same day, Plaintiffs filed a revised "Affidavit of Total Amount Due Plaintiffs," in order to incorporate the signatures of Mr. Killian and an authorized notary public. (ECF No. 25).

## II.    DISCUSSION

### A.    <u>Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a

4

district court has the discretion to grant default judgment.  *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co*., 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

More than eight months have passed since the Defendant received the Amended Complaint. (ECF No. 17).  The Defendant has neither filed an opposition nor otherwise defended against this case.  Plaintiffs filed a Certificate of Service, demonstrating that the Amended Complaint was served via certified mail upon a representative authorized to accept it.  (*Id.*).  Therefore, I find that Defendant has been available to respond or defend against this case, yet has failed to do so.  Thus, I recommend that default judgment be entered.

**B.    Damages**

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6).  "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'"  *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc*., Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011).  If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004,

2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required"). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

### 1. Contributions

Plaintiffs assert that the Defendant is delinquent in making contributions for the following periods: (a) December 2019, December 2020, and February 2022 through July 2022, for the NEBF Fund; and (b) December 2019, December 2020, and February 2022 through July 2022 for the NEAP Fund. (ECF Nos. 16, pp. 7-8; 25, pp. 2-3; 24-8, pp. 5-9; 24-9, pp. 5-7).

I find that the applicable ERISA provisions and the trust agreements establishing the Benefit Funds and the Labor Agreement required the Defendant to have made timely contributions. 29 U.S.C. § 1145(1980) of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that the Plaintiffs are considered multi-employer plans, because they are multi-employer pension benefit plans. *See* 29 U.S.C. §§ 1002(2), (3), and 1145. The record demonstrates that the Defendant, through its agent/representative, Charles Kanavel, is a party to the Labor Agreement and the trust agreements governing the Benefit Funds. (ECF No. 24-5, pp. 7, 9). By signing the Labor Agreement, the Defendant accepted the terms therein and the terms of the trust agreements. (ECF No. 24-5, p. 5). I further find that the documents governing the Benefit Funds

obligated the Defendant to make contributions based upon payroll generated for each covered employee. (ECF No. 25, pp. 1-3).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action. *See* 29 U.S.C. § 1132. If a plaintiff prevails in its action, a district court is then required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has explained that a plan's ability to bring forth legal action as "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit has reasoned that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). I find that Plaintiffs have the right to collect unpaid contributions from the Defendant.

### 2. Specific Recovery Sought

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek the following for the NEBF Fund: (1) $21,852.61 for delinquent contributions; (2) $4,370.52 in liquidated damages, which represents 20% of the contributions due and owing; (3) $2,204.26 in accrued interest (computed by considering the delinquent contributions and imposing 10% interest per year, compounded monthly); (4) $800.00 in audit fees; and (5) $276.00 in costs, and $1,985.60 in attorney's fees. (ECF Nos. 16, pp. 4-8; 24-1, pp. 5-6; 25, pp. 2-4). In addition, Plaintiffs seek the following for the NEAP Fund: (1) $117,878.30 for delinquent contributions; (2) $23,575.66 in liquidated damages, which

represents 20% of the contributions due and owing; (3) $7,663.86 in accrued interest (computed by considering the delinquent contributions and imposing 10% interest per year, compounded monthly); (4) $1,200.00 in audit fees; and (5) $276.00 in costs, and $1,985.60 in attorney's fees. (ECF Nos. 16, pp. 4-8; 24-1, pp. 5-6; 25, pp. 2-4).

I reviewed all of the Plaintiffs' supporting documentation to make my findings and recommendations.

### a.  Unpaid Contributions

Plaintiffs assert that the Defendant owes contributions in the amount of $21,852.61 and $117,878.30 for the NEBF and NEAP Funds, respectively.  (ECF No. 16, pp. 7-8).  I find that Plaintiffs' damages request is supported by exhibits and an affidavit from Brian Killian, a Contribution Compliance Manager.  (ECF Nos. 24-10, p. 1; 24-11, p. 1; 24-12, pp. 1-2; 24-13, pp. 1-2; 25, pp. 1-4).  Mr. Killian reviewed the trust agreements, and the Labor Agreement, and, in accordance with them, calculated the total amount of contributions owed for each month to each fund by reviewing the reports submitted by the Defendant.  (ECF No. 25, pp. 1-4). I also credit Plaintiffs' spreadsheets, which provides a monthly breakdown of the contributions owed to the Benefit Funds.  (ECF Nos. 24-10, p. 1; 24-11, p. 1; 24-12, pp. 1-2; 24-13, pp. 1-2).

The Defendant has not refuted Plaintiffs' evidence because it failed to file a responsive pleading.  Thus, I recommend an award to the Plaintiffs for unpaid contributions in the amounts of $21,852.61 and $117,878.30 for the NEBF and NEAP Funds.

### b.  Accrued Interest on Unpaid Contributions

Plaintiffs claim the amounts of $2,204.26 and $7,663.86 in accrued interest for the NEBF and NEAP Benefit Funds, respectively.  (ECF Nos. 16, pp. 4-7; 25, p. 3). The ability to assess interest on late contributions is found in 29 U.S.C. § 1132(g)(2)(C)(i), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan." The trust agreements'

Benefits Funds establish guidelines for computing interest on late contributions. Interest will be assessed at the rate of 10% per annum, compounded monthly through the date the pleading was filed "plus an award of interest accruing from the [date the pleading was filed] until contributions are paid in full." (ECF Nos. 16, p. 5; 24-6, p. 7; 24-7, p. 6). Here, there is undisputed evidence that the Defendant's unpaid contributions are delinquent. Therefore, Plaintiffs are entitled to interest assessed on the unpaid total.

Accordingly, I recommend that the Court award Plaintiffs accrued interest in the amounts of $2,204.26 and $7,663.86, plus any further accrued interest consistent with the Benefits Funds' guidelines for computing interest on unpaid contributions upon date of payment. *See* 29 U.S.C. § 1132(g)(2)(E) ("the court shall award such other legal or equitable relief as [it] deems appropriate").

### c.  Liquidated Damages

Plaintiffs request liquidated damages in the amounts of $4,370.52 and $23,575.66 for the NEBF and NEAP Benefit Funds, respectively. (ECF Nos. 16, pp. 7-8; 25, p. 3).

Under ERISA, a prevailing party shall be entitled to liquidated damages, which "can be awarded at the greater amount of either: (1) the [accrued] interest on delinquent contributions; or (2) the 'liquidated damages provided for under the plan and not in excess of 20 percent' of the delinquent contributions." *Trustees of the Nat'l Elec. Benefit Fund v. Loga Holding, LLC*, Civ. No. PWG-21-2917, 2022 WL 3100759, at *3 (D. Md. Aug. 4, 2022) (citing 29 U.S.C. § 1132(g)(2)(C)(i)-(ii)).

Here, for the NEBF, the record reflects that Plaintiffs are seeking $4,370.52 in liquidated damages, per the rate set forth in the trust agreement related to the NEBF. (ECF Nos. 16, p. 7; 24-6, p. 7; 25, pp. 2-3). In contrast, Plaintiffs are seeking $2,204.26 in accrued interest. (ECF Nos. 16, p. 7; 24-10, p. 1; 24-12, p. 1; 25, p. 3). For the NEAP, the record reflects that Plaintiffs are seeking

$23,575.66 in liquidated damages, per the rate set forth in the trust agreement related to the NEAP. (ECF Nos. 16, p. 8; 24-7, p. 5; 25, p. 3). In contrast, Plaintiffs are seeking $7,663.86 in accrued interest. (ECF Nos. 16, p. 8; 24-11, p. 1; 24-13, p. 1; 25, p. 3). I compared the total amount of liquidated damages assessed to the total amount of unpaid contributions. I find that the requested amounts of liquidated damages, at the rate set forth in the trust agreements, do not exceed what is permitted by statute, as the trust agreements allow for a recovery of 20% of the delinquent contributions (ECF Nos. 24-6, p. 7; 24-7, p. 5). In addition, for both the NEBF and the NEAP plans, liquidated damages at the rates set forth in the trust agreements exceeds the accrued interest on delinquent contributions. As such,  I recommend and award liquidated damages to the Plaintiffs in the amounts of $4,370.52 and $23,575.66 for the NEBF and NEAP Benefit Funds, respectively.

d.   <u>Audit Fees</u>

Plaintiffs request audit fees in the amount of $800.00 and $1,200.00 on behalf of the NEBF and NEAP Benefit Funds, respectively. (ECF Nos. 16, pp. 7-8; 25, p. 3). I find that this request is supported by the "Payroll Audit Report" attached by Plaintiffs to their Motion. (ECF Nos. 24-8, pp. 1-9; 24-9, pp. 1-8). The Plaintiffs retained WithumSmith+Brown, P.C. to examine their payroll records that spanned from April 2019 to December 2020. The Payroll Audit Report shows the amount that Plaintiffs had to pay for the audit to be performed by WithumSmith+Brown, P.C. (*Id.*).

Under ERISA, if the court enters a judgment on behalf of a multi-employer plan, it shall permit the prevailing party to collect "such other legal or equitable relief as the court deems appropriate," which may include audit fees. *See* 29 U.S.C. § 1132(g)(2)(E); *see also Nat'l Elec. Benefit Fund v. Code Eng'g Servs., Inc*., Civ. No. WC-16-1685, 2016 WL 6926404, at *6 (D. Md. Nov. 28, 2016) (holding audit fees are allowed under ERISA); *Trustees of Nat'l Elec. Benefit Fund v. D.N.R. Elec. Contractors, Inc.*, Civ. No. TJS-22-2901, 2023 WL 3580086, at *1 (D. Md. May 22, 2023) (same).

10

Here, for the NEBF, the record reflects that Plaintiffs are seeking $800.00 in audit costs. For the NEAP, the record reflects that Plaintiffs are seeking $1,200.00 in audit costs. As a preliminary matter, according to the trust agreements, the Plaintiffs are entitled to recover "all costs," which specifically includes audit costs incurred in determining the delinquency. (ECF Nos. 24-6, pp. 7-8; 24-7, pp. 1-6). In addition, the Court credits Plaintiffs' Payroll Audit Report which lists the costs incurred for the audit. The Defendant has not refuted Plaintiffs' evidence because it failed to file a responsive pleading. Thus, I recommend and award audit costs to the Plaintiffs in the amounts of $800.00 and $1,200.00 for the NEBF and NEAP Benefit Funds.

In sum, because Plaintiffs' damages sought are unrefuted, the Court will grant Plaintiffs request for unpaid contributions, liquidated damages, accrued interest on the unpaid contributions, as well as audit costs on the unpaid contributions, as permitted. Consequently, I recommend that the Court award damages to the Plaintiffs in the amount of $31,488.99 for the NEBF Fund, and $152,579.42 for the NEAP Fund, plus any further accrued interest on unpaid contributions upon date of payment.

e.  <u>Attorney's Fees and Court Costs</u>

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorney's fees and costs of the action," where, as here, the requesting party prevails. In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, 2011 WL 5151067, at *6; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, Civ. No. WDQ-11-172, 2011 WL 3744123, at *7 (D. Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific

evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).

A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Civ. No. NKM-07-65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008); *see* Appendix B of this district's "Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" ("Guidelines") provides, in pertinent part, that lawyers admitted to the Bar for twenty years or more may reasonably bill $300-475/hour, and lawyers admitted to the Bar for less than five years may reasonably bill $150-225/hour. *See* Guidelines, at ¶ 3.e, f.

In this case, the Plaintiffs request payments in the amounts of $1,985.60 for attorney's fees related to the NEBF, and $1,985.60 in attorney's fees related to the NEAP. In support, Plaintiffs offer a declaration from Jennifer Bush Hawkins, Esq., an attorney at Potts-Dupre, Hawkins & Kramer, Chtd. (ECF No. 24-1, pp. 1-7). Ms. Hawkins, who has been a member of the Bar for more than twenty-five years, submits two charts. The NEBF chart reflects that she billed Plaintiffs for 1.9 hours of work at an hourly rate of $392.00, for a total fee of $744.80, and that Peter Tkach, her co-counsel, who has been a member of the Bar for less than five years, worked 6.6 hours at an hourly rate of $188.00 for a total fee of $1,240.80. (*Id.*, pp. 2-4). The NEAP chart reflects that Ms. Hawkins billed Plaintiffs for 1.9 hours of work at an hourly rate of $392.00, for a total fee of $744.80, and that Mr. Tkach worked 6.6 hours at an hourly rate of $188.00 for a total fee of $1,240.80. (*Id.*, pp. 4-5).

According to Ms. Hawkins, the hours generated relate to reviewing the case file and preparing the Amended Complaint and default judgment motions. (*Id.*, pp. 2-5). Ms. Hawkins' hourly rate falls within the suggested range, as does that of her co-counsel. *See* Local Rules, App'x

12

B, at 3.e, f.[2] In addition, I find that a total of 8.5 hours is a reasonable amount of time expended for the work performed for the NEBF, and 8.5 hours is a reasonable amount of time expended for the work performed for the NEAP.

In addition, Plaintiffs seek court costs of $402.00 (court filing fee) and $150.00 (private process server fee) for total costs in the amount of $552.00, to be divided equally between both Benefit Funds. (ECF No. 24-1, p. 6). In support of the request, Plaintiffs provide an invoice from the process server. (ECF No. 24-3, p. 1). I find that this type of cost is ordinarily charged to a client and is reasonable out-of-pocket expense. In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D).

Accordingly, I recommend that the Court award $3,971.20 in attorney's fees and $552.00 in court costs related to the Benefit Funds.

## III.   CONCLUSION

In sum, I respectfully recommend that the Court, **GRANT** Plaintiffs' "Motion for Default Judgment" against the Defendant. (ECF No. 24)  I further recommend that the district court enter judgment in favor of the Plaintiffs in the following amounts:

**NEBF**

(a) Unpaid contributions in the amount of $21,852.61;

(b) Interest in the amount of $2,204.26 plus interest accrued upon the date of payment;

(c) Liquidated damages in the amount of $4,370.52;

(d) Audit fees in the amount of $800.00;

(e) Attorney's fees of $1,985.60; and

---

[2] Counsel for Plaintiffs also submitted the "Adjusted Laffey Matrix" of prevailing rates for an attorney practicing in Washington, D.C. (ECF No. 24-2, pp. 1-2). I do not find this information persuasive, as Appendix B, although not binding, sets forth the presumptively reasonable hourly rates on an attorney's years of experience. *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

(f)  Court costs in the amount of $276.00.

**NEAP**

(a) Unpaid contributions in the amount of $117,878.30;

(b) Interest in the amount of $7,663.86 plus interest accrued upon the date of payment;

(c) Liquidated damages in the amount of $23,575.66;

(d) Audit fees in the amount of $1,200.00;

(e) Attorney's fees of $1,985.60; and

(f) Court costs in the amount of $276.00.


Dated: July 31, 2023                                      _____/s/_____
                                                         The Honorable Gina L. Simms
                                                         United States Magistrate Judge

14